Merril Lee CURRY *v.* STATE of Arkansas

CR 80-142                                    613 S.W. 2d 829

Supreme Court of Arkansas
Opinion delivered April 13, 1981

*E. Alvin Schay*, State Appellate Defender, by: *Linda Faulkner Boone*, Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie M. Powell*, Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant was convicted by a jury of first degree murder, Ark. Stat. Ann. § 41-1502 (Repl. 1977), and sentenced to life imprisonment. She had interposed the affirmative defense of insanity. Ark. Stat. Ann. § 41-601 (Repl. 1977). The only issue argued on appeal is that no substantial evidence exists to support the jury's finding that appellant was not insane at the time of the alleged offense.

Appellant was employed at a grocery store in Pine Bluff. On November 8, 1976, she was called to the office of the manager, Edward Chrisp, III, who suspended her from work. That night she called him about her suspension, and he told her he would talk to her during store hours. The next night she contacted him again by phone at his home about midnight, and he told her he did not want to talk to her. About a half hour later she arrived at the Chrisp home and rang the doorbell. Both Mr. and Mrs. Chrisp went to the door. Mr. Chrisp again advised her he did not want to talk to her. She pulled a gun and the Chrisps attempted to close the door. She shot through the door, hitting Mr. Chrisp. She then forced the door open, entered the home and continued firing at the prostrate Chrisp. Shortly thereafter, the police arrived and found appellant pointing the gun at Chrisp. He was pronounced dead at the scene.

In support of appellant's affirmative defense of insanity, Dr. Roaf, an obstetrician-gynecologist who had been treating her several months for physical ailments, testified appellant appeared to be suffering from anxiety or neurosis and exhibited some symptoms of hysteria. When he saw her in jail on the 10th, a few hours after the shooting, it was his opinion she did not know right from wrong. He had her admitted to the Southeast Arkansas Mental Health Center with the diagnosis of acute psychosis and dehydration. Dr. James, a staff psychiatrist at that facility, stated that the tests did not suggest a clear-cut psychosis. He did not form an opinion but recommended further evaluation at the state hospital. Dr. Donahue, a state hospital doctor, observed appellant there in April of 1977. He concluded appellant

was seriously disturbed, very possibly actively psychotic in the recent past. His diagnosis on the basis of his testing was paranoid schizophrenia. He did not believe she could distinguish between right and wrong or conform her behavior to the requirements of the law. Dr. Carroll, a private psychologist, who reviewed the tests and findings of the other doctors, testified his findings were consistent with a finding of paranoid schizophrenia. Dr. Stevens, a self-employed clinical psychologist, examined her about nine months after the shooting. His tests of appellant indicated borderline psychosis. However, the tests indicated she had a hysterical personality and a capacity for disassociative episodes. The tests indicated a potential for acute psychotic episodes in which she would lose touch with reality. He believed she was actively psychotic at the time of the shooting, did not know right from wrong, and had no concept of conforming her behavior to the requirements of the law. Her brother and husband testified as to her strange behavior in recent years, including running from room to room through the house for hours and "talking to the mirror" for two or three hours.

In rebuttal Dr. Rosendale of the state hospital testified that he noted no abnormal behavior from the notes kept by the nurses. From her performance at the staff interviews and her responses to questioning at that time he determined she was not suffering from a mental illness or defect to the point that would render her unable to appreciate the criminality of her act. Dr. Oglesby of the state hospital found appellant had a personality disorder but was not psychotic. There was testimony that at the scene of the crime appellant stated to the officers, "Go ahead and shoot me. I've already done what I've come to do." The jail sergeant testified appellant seemed to understand his questions and responded to them when she was brought there following the shooting. Further, appellant, upon seeing another officer, stated, "I'm going to get him," explaining that this officer had mistreated her in a recent incident.

On appellate review, the question is not whether the verdict is against the weight or preponderance of the evidence, but whether there is any substantial evidence to

support the verdict; the jury is the sole judge of the credibility of expert and other witnesses and the weight to be accorded their testimony. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W. 2d 342 (1979). In determining the sufficiency of the evidence, we consider that evidence most favorable to the appellee and affirm if any substantial evidence exists. *Williams* v. *State*, 257 Ark. 8, 513 S.W. 2d 793 (1974).

Here, the evidence was in conflict as to appellant's mental capacity to know right from wrong at the time of the alleged offense. The jury resolved that conflict by finding her legally responsible for her acts and conduct at that time. Viewing the evidence most favorable to the appellee, as we must do on appeal, we hold that there is substantial evidence to support the verdict. (Shirley Marie) *Curry* v. *State*, 271 Ark. 913, 611 S.W. 2d 745 (1981). Here, as required by Ark. Stat. Ann. § 43-2725 (Repl. 1977), we have reviewed the record for any prejudicial errors and find none.

Affirmed.